**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Monte D. McFALL, Defendant—**
**Appellant.**

No. 07–10034.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 8, 2008.

Decided March 9, 2009.

See also, 519 F.3d 909.

Benjamin B. Wagner, Office of the U.S. Attorney, Sacramento, CA, for Plaintiff–Appellee.

John R. Duree, Jr., Esquire, Law Offices, Victor Stephen Haltom, Law Office of Victor S. Haltom, Sacramento, CA, for Defendant–Appellant.

Before: SCHROEDER, TASHIMA, and W. FLETCHER, Circuit Judges.

### MEMORANDUM *

Monte D. McFall ("McFall"), a former lobbyist and local elected official, stands convicted of nine counts of attempted extortion and conspiracy to commit extortion, 18 U.S.C. § 1951, six counts of honest services mail fraud, 18 U.S.C. §§ 1341, 1346, and two counts of attempted witness tampering, 18 U.S.C. § 1512(b)(1), (3). The district court sentenced McFall to 121 months' imprisonment and a $50,000 fine.

McFall raises a long list of contentions on appeal. In addition to the contentions addressed in our concurrently filed opinion, McFall challenges the admission of prejudicial character evidence against him, the effectiveness of trial counsel's representation, the denial of a motion to disqualify the presiding judge, the denial of

multiple motions to continue his trial, the sufficiency of the evidence in support of one of the attempted extortion counts, the government's refusal to compel exculpatory testimony, the district court's application of the sentencing guidelines, and the denial of his motion for a new trial.[1] We conclude that McFall's claims either lack merit, or have been rendered moot by our accompanying opinion reversing his convictions in part.

1. During the government's cross-examination of McFall, the district court permitted prosecutors to question him about specific instances of violent and otherwise anti-social behavior spanning over 35 years.

Character evidence is generally inadmissible to prove conduct in conformity therewith—even where relevant—because of the danger that a jury "uncertain of guilt [ ] will convict anyway because a bad person deserves punishment...." *Old Chief v. United States,* 519 U.S. 172, 181, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) (quoting *United States v. Moccia,* 681 F.2d 61, 63 (1st Cir.1982)). McFall concedes that his counsel "opened the door" for admission of negative character evidence when he introduced evidence that McFall was "an honest businessman" and "an outstanding individual." *See* Fed. R.Evid. 404(a)(1) (explaining that prosecutors may introduce character evidence to rebut evidence of specific character traits of an accused, where the defendant first puts those traits at issue). Admissible character evidence, however, must be offered in the form of reputation or opinion testimony, and evidence of specific past

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. McFall's contentions related to Counts 2, 3, 4, 11, and 14 are addressed in a separate,

concurrently filed opinion. We recount the factual and procedural background of this case in that opinion, and recite here only the facts necessary to explain our memorandum decision.

acts is only permitted under limited circumstances. *See* Fed.R.Evid. 405.

Where the defendant elects to take the stand, however, evidence of specific past acts may be offered to impeach the defendant's testimony by contradiction. *See United States v. Antonakeas*, 255 F.3d 714, 724 (9th Cir.2001). On cross-examination, prosecutors asked McFall whether he had "a history of threatening and scaring people." He declined to confirm the suggestion, and the government proceeded to impeach him with references to specific past instances where he threatened and scared people. Thus, the bad character evidence was not offered to prove conduct in conformity therewith, but rather to undermine the jury's confidence in McFall's truthfulness by contradicting him. Impeachment by contradiction, however, is not permitted to rebut statements that a witness makes during cross-examination. *See United States v. Kincaid–Chauncey*, 556 F.3d 923, 932–33 (9th Cir.2009).

Even if the prosecution's references to McFall's past violent behavior could be construed as impeachment evidence offered to contradict statements he made on direct examination, it is clear that admitting the bad character evidence was an abuse of discretion. Its probative value as impeachment evidence was very low and the potential for unfair prejudice high. *See* Fed.R.Evid. 403 ("[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ...."); *see also Kincaid–Chauncey*, 556 F.3d at 932 ("[W]hen making the decision whether to permit impeachment by contradiction, trial courts should consid-

er the Rule 403 factors, such as confusion of the jury or the cumulative nature of the evidence.").

Nonetheless, we reverse only if the error was not harmless. *See United States v. Brown*, 880 F.2d 1012, 1016 (9th Cir. 1989); *see also* Fed.R.Crim.P. 52(a).

■ We conclude that the prosecution's references to McFall's past misconduct did not affect the outcome of the trial. The record was replete with clearly admissible testimony recounting instances where McFall threatened and intimidated people, and thus much of the past bad acts evidence introduced on cross-examination of McFall was cumulative and could not have provided the jury with a novel basis for condemning McFall. Moreover, the jury acquitted McFall on three of the six honest services mail fraud charges, suggesting that the verdict did not amount to a wholesale condemnation of his character.

2. McFall argues that he suffered from ineffective assistance of counsel ("IAC") at trial.[2] We evaluate IAC claims under the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, McFall must establish that trial counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. Second, McFall must show that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Kwan*, 407 F.3d 1005, 1017 (9th Cir.2005).

McFall's IAC claim fails under both prongs. Several of the particular instances of deficient representation he points to exaggerate counsel's ineptitude (*e.g.*, fail-

---

**2.** Although IAC claims are "generally inappropriate on direct appeal," *United States v. McKenna*, 327 F.3d 830, 845 (9th Cir.2003), a defendant may raise an IAC claim on direct appeal if the district court fully developed the

record on the issue, *id.* Here, the district court held an evidentiary hearing and received extensive evidence and briefing, including testimony from McFall's trial counsel.

ure to get an unavailable witness' grand jury testimony admitted into evidence, decision to call McFall as a witness, failure to secure a continuance) given the legal and practical complexity of the case. With respect to counsel's more substantive errors (*e.g.,* failure to conduct any independent pre-trial investigation, decision to call defense witness that offered damaging testimony), McFall cannot establish prejudice. *See Strickland,* 466 U.S. at 697, 104 S.Ct. 2052 (explaining that where an IAC claim fails under the prejudice prong, a court need not consider the performance prong). We agree with the district court's conclusion that trial counsel's representation did not result in a Sixth Amendment violation.

3. The district judge did not err in declining to recuse himself. The denial of a motion to recuse is reviewed for abuse of discretion. *United States v. Gordon,* 974 F.2d 1110, 1114 (9th Cir.1992).

■ McFall has not shown that an informed and objective observer would question the district judge's impartiality. *See United States v. Hernandez,* 109 F.3d 1450, 1453 (9th Cir.1997). In this case, the court found that McFall made a disrespectful and intimidating gesture toward the presiding judge. One gesture, standing alone, is not enough to *require* recusal, as courts have upheld refusals to recuse in circumstances where a party makes serious and credible threats against a presiding judge. *See United States v. Holland,* 519 F.3d 909, 915–16 (9th Cir.2008).

4. The district court did not abuse its discretion in denying, on three separate occasions, McFall's motions to continue his trial.

■ McFall's first two continuance requests were based on trial counsel's desire for more time to prepare. "The matter of a continuance is traditionally within the discretion of the trial judge, and it is not

every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). McFall's trial counsel moved for a continuance one week before trial was set to begin and again on the first day of trial. On both occasions he claimed that McFall's co-defendants' decision to plead guilty had caught him off guard. The trial date had been set for five months, and had already been continued once (over McFall's objection). Accordingly, the district court reasonably denied the request, concluding that trial counsel could be expected to have anticipated the possibility that McFall's co-defendants would plead guilty.

■ Trial counsel's third continuance request was predicated on the need to obtain the testimony of McFall's former co-defendants, Neat Allen Sawyer ("Sawyer"), T. Baxter Dunn ("Dunn"), and Lynn Bedford ("Bedford"). All three had pleaded guilty but had not yet been sentenced at the time McFall made the continuance request. With respect to the convictions we affirm in this memorandum, McFall has not shown that the testimony of his former co-defendants would have been of significant benefit to his defense. Sawyer's testimony would only help McFall in challenging his conviction on Count 14, a conviction we reverse in our concurrently filed opinion. With respect to Bedford, McFall has shown only that he could offer exculpatory testimony relating to Counts 2, 3, and 4, convictions which we also reverse in our concurrently filed opinion. McFall has not established that Sawyer, Dunn, or Bedford could offer testimony likely to change the trial's outcome as to any of the remaining counts. The burden is on McFall to show that the trial court's denial of his third continuance request prejudiced him, and he has not carried

that burden. *See United States v. Gonzalez–Rincon*, 36 F.3d 859, 865 (9th Cir. 1994).

5. McFall argues that, with respect to Count 13, the evidence presented to the jury was not sufficient to prove attempted extortion because his conduct was not "wrongful." Under the Hobbs Act, an attempt to obtain another's property is generally "wrongful" if the alleged extortionist has no lawful claim to that property. *See United States v. Enmons*, 410 U.S. 396, 400, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973). McFall argues that his putative threats against the Diamond Generating Company ("DGC") amounted to no more than stating an intention to lawfully participate in state and local politics, and thus they were not "wrongful."

■ We disagree. The district court reasonably concluded that, construing the evidence in the government's favor, the record establishes that "from the very start" McFall's threatened opposition to a DGC project "had nothing to with legitimate concerns" about the merits of the project, and everything to do with compelling payments to which he was not entitled. As such, McFall's conduct was wrongful, and sufficient evidence supports the jury verdict on Count 13.

6. McFall alleges that prosecutors violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), when they refused to compel the testimony of two of his former co-defendants, Sawyer and Dunn, after both men invoked their Fifth Amendment right not to testify at McFall's trial.[3] To establish a *Brady* violation, McFall must show: (1) that the evidence at issue is favorable to him, either because it is exculpatory or because it is impeaching; (2) that prosecutors suppressed the evidence, either willfully or

inadvertently; and (3) that prejudice ensued. *United States v. Williams*, 547 F.3d 1187, 1202 (9th Cir.2008).

■ McFall has not shown prejudice, and we thus reject his *Brady* claim. As we explain above, McFall has not established that Sawyer or Dunn could offer exculpatory testimony relating to the convictions we affirm here.

7. McFall's challenges to his sentence are now moot, because our concurrently filed opinion vacates his sentence and remands for resentencing.

■ 8. The district court did not abuse its discretion in denying McFall's motion for a new trial. McFall contends that the district court erred in upholding his former co-defendants' invocation of their Fifth Amendment privilege not to testify at the hearing on his motion for a new trial because they had already been sentenced and thus no longer faced the possibility of incrimination. *See Mitchell v. United States*, 526 U.S. 314, 326, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999) ("It is true, as a general rule, that where there can be no further incrimination, there is no basis for the assertion of the privilege. We conclude that principle applies to cases in which the sentence has been fixed and the judgment of conviction has become final.").

Even if the district court erred, however, the error did not prejudice McFall. As discussed above, neither Sawyer, Dunn, nor Bedford could offer testimony likely to exculpate McFall on the counts we affirm in this memorandum.

9. For the reasons set forth above, we **AFFIRM** McFall's conviction on Counts 1, 10, 12–13, 23–28, and 30–31.

---

3. Both Sawyer's and Dunn's plea agreements contained a "cooperation clause," under which prosecutors had the power to compel their testimony at trial.