**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JUN 2 3 2016

Madsen C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on June 23, 2016

Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 91934-8 |
| Respondent, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| K.H.-H., | ) | |
| | ) | |
| Petitioner. | ) | |
| | ) | Filed _____ JUN 2 3 2016 |

JOHNSON, J.— This case involves whether a juvenile disposition condition requiring K.H.-H.—who was adjudicated guilty of fourth degree assault with sexual motivation—to write an apology letter to the victim violates his constitutional free speech rights. U.S. CONST. amend. I. We hold that it does not.

FACTS AND PROCEDURAL HISTORY

K.H.-H., a 17-year-old male, was charged with assault with sexual motivation after he forced himself on C.R., a female acquaintance who attended the same high school. K.H.-H. and C.R. were sitting on C.R.'s bed when K.H.-H. began to kiss her on the face and neck. She responded by telling K.H.-H. to "chill it or to back off." Verbatim Tr. of Proceedings (Aug. 13, 2013) (VTP) at 29. Undeterred, K.H.-H. pushed C.R. onto her back, leaned over her, and began biting

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

her neck. C.R. protested and tried to push K.H.-H. away and told him to "stop" and to get off her, and that it hurt. VTP at 35. K.H.-H. "pushed his weight down more on [her] hands," reached under her shirt and bra in an attempt to touch her breasts, and reached into and "tr[ied] to undo [her] pants." VTP at 32, 33. C.R. grabbed her cell phone and threatened to call her father, prompting K.H.-H. to leave the house. C.R. noticed bruises on her neck from the bites and showed the marks to her friend, J.S. J.S. confronted K.H.-H. about the incident and then informed a school official.

The State charged K.H.-H. with two counts of fourth degree assault with sexual motivation: one for the incident with C.R. and another for an incident involving a different girl. The juvenile court adjudicated K.H.-H. guilty on the count involving C.R. and not guilty on the count involving the other girl. At the disposition hearing, the State requested the court order K.H.-H. to address to C.R. "a sincere written letter of apology . . . mean[ing] an admission that he did what he was accused of what he's [sic] doing and [is] sorry he put her in that position." VTP at 149. Defense counsel objected to this condition, insisting that K.H.-H. maintained the right to control his speech.

The juvenile court sentenced K.H.-H. to three months of community supervision and also ordered K.H.-H. to "write a letter of apology to victim C.R.

*State v. K.H.-H.*, No. 91934-8

that is approved by the Probation Officer and the State." Clerk's Papers (CP) at 42.

K.H.-H. appealed his conviction and sentence, arguing in part that the apology

letter requirement violated his rights under the First Amendment to the United

States Constitution to be free from compelled speech.[1]

The Court of Appeals affirmed the sentence, holding that the apology letter

was permissible under *United States v. Clark*, 918 F.2d 843 (9th Cir. 1990),

*overruled on other grounds by United States v. Keys*, 133 F.3d 1282 (9th Cir.

1998), because the apology letter requirement served the State's compelling

interest in rehabilitating juvenile offenders. *State v. K.H.-H.*, 188 Wn. App. 413,

421, 353 P.3d 661 (2015).

This court granted K.H.-H.'s petition for review of the condition requiring

him to write the apology letter. *State v. K.H.-H.*, 184 Wn.2d 1010, 360 P.3d 817

(2015).

## ANALYSIS

This court has never addressed the question of whether it is a violation of the

First Amendment or our own article I, section 5 of the Washington Constitution to

order a juvenile defendant in a criminal case to write a letter of apology.

---

[1] K.H.-H. also challenged the sufficiency of the evidence, an issue not before this court.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. K.H.-H.*, No. 91934-8

The First Amendment prohibits states from "abridging the freedom of speech." U.S. CONST. amend. I; *see Gitlow v. New York,* 268 U.S. 652, 666, 45 S. Ct. 625, 69 L. Ed. 1138 (1925). The United States Supreme Court has held that "the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard,* 430 U.S. 705, 714, 97 S. Ct. 1428, 51 L. Ed. 2d 752 (1977). The protection from compelled speech extends to statements of fact as well as of opinion. *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.,* 547 U.S. 47, 62, 126 S. Ct. 1297, 164 L. Ed. 2d 156 (2006). Article I, section 5 of the Washington Constitution guarantees that "[e]very person may freely speak, write and publish on all subjects, being responsible for the abuse of that right." WASH. CONST. art. I, § 5. K.H.-H. does not advocate an independent state constitutional analysis but instead argues our cases articulate a First Amendment analysis distinct from that applied in *Clark.* The issue here centers on the protection from government-compelled speech.

Because a forced apology involves making an offender say something he does not wish to say, it implicates the compelled speech doctrine. The compelled speech doctrine generally dictates that the State cannot force individuals to deliver messages that they do not wish to make. *See, e.g., Wooley,* 430 U.S. 705 (the State

4

*State v. K.H.-H.*, No. 91934-8

may not compel individuals to display on their vehicles a license plate motto with which they disagree); *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 63 S. Ct. 1178, 87 L. Ed. 1628 (1943) (a compelled flag salute and pledge of allegiance in public schools violates the First Amendment).

First Amendment rights are not absolute, however, particularly in the context of prison[2] and probation, where constitutional rights are lessened or not applicable. Similarly, criminal convictions result in loss or lessening of constitutional rights. Because of this, we find *Wooley* and *Barnette* are inapplicable in the present case, as they define the boundaries of free speech for those not convicted of crimes. While the Supreme Court has never addressed anything related to the constitutionality of a probation condition that implicates an individual's right to free speech,[3] the federal circuit courts have reviewed this issue and analyzed it under similar situations. The Court of Appeals in the present case relied on the analysis used by the Second[4] and Ninth Circuits as articulated in

---

[2] *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987) ("'[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" (quoting *Price v. Johnston*, 334 U.S. 266, 285, 68 S. Ct. 1049, 92 L. Ed. 2d 1356 (1948)).

[3] *See Griffin v. Wisconsin*, 483 U.S. 868, 874 n.2, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987) (reserving the question of the standard of review for probation conditions).

[4] *Birzon v. King*, 469 F.2d 1241, 1243 (2d Cir. 1972).

5

*State v. K.H.-H.*, No. 91934-8

*Clark* in deciding that the disposition did not violate the First Amendment. *See K.H.-H.*, 188 Wn. App. at 423.

Most analogous to the facts here, in *Clark* the trial court imposed a probation condition requiring two former police officers convicted of perjury to publish apologies for their crimes, which they denied having committed. The officers posited that the apology requirement violated their First Amendment right to refrain from speaking. In rejecting this argument, the Ninth Circuit acknowledged the broad discretion a sentencing judge has in setting probation conditions, reasoning that "even where preferred rights are affected, [the test] is 'whether the limitations are primarily designed to affect the rehabilitation of the probationer or insure the protection of the public.'" *Clark*, 918 F.2d at 848 (quoting *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 265 n.14 (9th Cir. 1975)). When applying the analysis from *Clark*, a court asks whether the sentencing judge imposed the conditions for permissible purposes, and then determines whether the conditions are *reasonably related* to those purposes. *Clark*, 918 F.2d at 848.

Asserting that Washington's case law requires more than the ostensible *reasonably related* standard articulated in *Clark*, K.H.-H. cites *State v. Bahl*, 164 Wn.2d 739, 757-58, 193 P.3d 678 (2008). *Bahl* concerned a constitutional vagueness challenge to a community custody condition that the defendant not

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. K.H.-H.*, No. 91934-8

possess or access pornographic materials, imposed under the Sentencing Reform Act of 1981, chapter 9.94A RCW. *Bahl*, 164 Wn.2d at 743.

In *Bahl*, this court held that sentence conditions that implicate free speech rights must be narrowly tailored to serve an important government interest and must be reasonably necessary to achieving that interest. *Bahl*, 164 Wn.2d at 757. The State argued in *Bahl* that Washington law required that sentencing conditions be only "crime-related" to be valid. This court held that both federal and state law required more connection (or nexus) before conditions that infringe on constitutional rights may be imposed. In our analysis, we referred to the analysis in *Malone v. United States*, 502 F.2d 554, 556 (9th Cir. 1974), which held that "*freedom of association* may be restricted if reasonably necessary to accomplish the essential needs of the state and public order." (Emphasis added.) We concluded that the restriction on accessing or possessing pornographic materials at issue was unconstitutionally vague. Since *Bahl* involved a vagueness analysis, where the inquiry also focuses on notice concerns, it is of little relevance here.[5] Even if one were to equate the two approaches, we would uphold the condition here.

---

[5] No argument is made here that the condition is vague or that K.H.-H. could not understand the requirement.

7

*State v. K.H.-H.*, No. 91934-8

Although *Clark* and *Bahl* use different words and terms, they both embrace a somewhat similar approach of looking at the underlying purpose of the act as well as the nature of the crime in determining whether the condition is appropriate. The principles anchoring the analysis in both cases can be traced to the same source. The origins of the "reasonably related" analysis utilized in *Clark* come from the case *Consuelo-Gonzalez*, which analyzed the scope of constitutional protections available to probationers that were subject to limitations under the federal Probation Act, ch. 521, 43 Stat. 1259 (1925). *Consuelo-Gonzalez*, 521 F.2d at 264-65. In evaluating the federal Probation Act's underlying purpose of rehabilitation, the court recognized that the development of a sensible probationary system "requires that any condition which is imposed following conviction, whether or not it touches upon 'preferred' rights, must be viewed in the context of the goals underlying the Act." *Consuelo-Gonzalez*, 521 F.2d at 265 n.14. The court held that fundamental rights may be limited if they are imposed sensitively and with a "keen appreciation" that the limitation serve the purpose of the underlying act. *Consuelo-Gonzalez*, 521 F.2d at 265.

Both *Clark* and *Bahl* cite back to *Consuelo-Gonzalez*, but *Bahl* fashioned its analysis from *Riley* and *Malone*. *Bahl*, 164 Wn.2d at 757 (quoting *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993) (citing *Malone*, 502 F.2d at 566;

8

*State v. K.H.-H.*, No. 91934-8

*Consuelo-Gonzalez*, 521 F.2d at 265)); *Clark*, 918 F.2d at 847-48 (citing *Consuelo-Gonzalez*, 521 F.2d at 264-65). Additionally, the court in *Bahl*—whose inquiry was focused on a vagueness challenge—briefly mentioned the analysis from *Malone* in the context of providing an example to refute the State's claim that probationary conditions in Washington need *only* be crime related. The language in *Malone* refers to the constitutionality of a condition that restricts an individual's freedom of association. Furthermore, the case on which *Malone* relies, *Birzon v. King*, 469 F.2d 1241, 1243 (2d Cir. 1972), states that "the Government can infringe the first amendment rights of prisoners so long as the restrictions are *reasonably and necessarily related* to the advancement of some *justifiable purpose* of imprisonment." (Emphasis added.)

The result under either analysis is the same. Looking at the exact language of *Clark*, the court articulated a framework for determining the validity of probation conditions, stating:

> The test for validity of probation conditions, even where preferred rights are affected, is "whether the limitations are primarily designed to affect the rehabilitation of the probationer or insure the protection of the public." [*Consuelo-Gonzalez*, 521 F.2d] at 265, n. 14. To apply this test, our court "must determine whether the sentencing judge imposed the conditions for permissible purposes, and then it must determine whether the conditions are reasonably related to the purposes." *United States v. Terrigno*, 838 F.2d 371, 374 (9th Cir. 1988). "[T]he standard for determining the reasonable relationship between probation conditions and the purposes of

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

probation is necessarily very flexible precisely because 'of our uncertainty about how rehabilitation is accomplished.'" *Id., quoting Consuelo-Gonzalez,* 521 F.2d at 264.

*Clark,* 918 F.2d at 848 (second alteration in original). The court held that because neither officer had admitted guilt or taken responsibility for their actions, the condition would serve a rehabilitative purpose and was proper as it was reasonably related to the federal Probation Act's purpose of rehabilitation. *Clark,* 918 F.2d at 848 ("'It is almost axiomatic that the first step toward rehabilitation of an offender is the offender's recognition that he was at fault.'" (quoting *Gollaher v. United States,* 419 F.2d 520, 530 (9th Cir. 1969))). The apology condition was also related to the underlying crime: the defendants were public servants who betrayed the public's trust through acts of dishonesty. Under the framework of *Clark,* we can conclude a valid probation condition is one that is related to one of the purposes of the act—in this case, rehabilitation—and is done to effectuate that purpose. *Clark* embraces the idea that a trial court has wide discretion in fashioning conditions that serve a rehabilitative purpose. We agree with that analysis.

While *Clark* is more analogous to the present case because it involved a challenge to an apology condition whereas *Bahl* involved a constitutional vagueness challenge, the result in applying the analytical framework from *Bahl* to the present case is the same. The analysis from *Bahl* states,

10

*State v. K.H.-H.*, No. 91934-8

> A condition that constitutes a "[l]imitation[] upon fundamental rights" is "permissible, provided [it is] imposed sensitively." *Riley,* 121 Wn.2d at 37. In accord with the federal rule, a convict's First Amendment right "'may be restricted if reasonably necessary to accomplish the essential needs of the state and public order.'" *Id.* at 37-38 (quoting *Malone v. United States,* 502 F.2d 554, 556 (9th Cir. 1974)). Thus, conditions may be imposed that restrict free speech rights if reasonably necessary, but they must be sensitively imposed. This meshes with the vagueness doctrine's principle that where the challenged law involves First Amendment rights, a greater degree of specificity may be demanded. Here, for example, Bahl may be restricted in the material he may access or possess, but the restrictions implicating his First Amendment rights must be clear and must be reasonably necessary to accomplish essential state needs and public order.

*Bahl,* 164 Wn.2d at 757-58 (some alterations in original).

Even under *Bahl*'s somewhat different language, an apology letter condition would be upheld. The apology letter condition is specific and concrete. In the context of the present case, we find the condition is related to the crime of which the offender was convicted and furthers the reformation and rehabilitation of the juvenile, the purpose of the underlying act.

Under the Juvenile Justice Act of 1977 (JJA), chapter 13.40 RCW, no dispute exists that juvenile rehabilitation is an underlying purpose of the act. *See, e.g.,* RCW 13.40.010; *State v. J.A.,* 105 Wn. App. 879, 886, 20 P.3d 487 (2001) (the JJA seeks a balance between rehabilitation and retribution, and the purposes of accountability and punishment must at times give way to the purpose of

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. K.H.-H.*, No. 91934-8

responding to the needs of the juvenile); *State v. Bennett*, 92 Wn. App. 637, 644, 963 P.2d 212 (1998) ("the JJA is designed to foster rehabilitation as well as accountability of offenders"). Additionally, a victim has an interest in receiving a letter of apology. The apology letter condition primarily aims to rehabilitate the juvenile offender but also acknowledges the victim's interest in receiving the apology.

This conclusion is consistent with the statutory goals that identify measures that may be used to effectuate the purpose of rehabilitation. As part of the disposition order, juvenile courts are permitted to enter "local sanctions." RCW 13.40.160, .0357. Such sanctions include "0-12 months of community supervision." RCW 13.40.020(18). "Community supervision" is defined as "an individualized program" during a probationary period that includes "[m]onitoring and reporting requirements." RCW 13.40.020(5)(c). "'Monitoring and reporting requirements'" authorize the court to enter *other conditions or limitations* as the court may require which may not include confinement." RCW 13.40.020(20) (emphasis added).

Juvenile courts are permitted wide latitude and discretion in imposing conditions in a disposition order. This makes sense given that juveniles are, by their very nature, still developing. The JJA recognizes the differences between

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

adults and juveniles and embraces rehabilitation as a primary goal rather than a focus primarily on punishment. Because of this, we hold that a juvenile court can impose and require reasonable conditions that are related to the crime of which the offender was convicted and that further the reformation and rehabilitation of the juvenile.

Under the broad authority and discretion given to juvenile courts to craft dispositions that adhere to the legislative intent of rehabilitation and crime-relatedness, the juvenile court in the present case ordered K.H.-H. to "write a letter of apology to victim C.R. that is approved by the Probation Officer and the State." CP at 42; *see State v. D.H.*, 102 Wn. App. 620, 629, 9 P.3d 253 (2000) ("The juvenile court has considerable discretion to fashion an individualized rehabilitative disposition that includes a broad range of community supervision conditions."). The record in this case supports our conclusion that the juvenile court imposed the letter of apology condition for the purpose of rehabilitating K.H.-H. Specifically, the court was concerned that K.H.-H. refused to accept the consequences of his harmful conduct. The trial court discussed K.H.-H.'s "pattern of bad behavior with women" and pattern of "being disrespectful to women" and that the court had grown increasingly concerned after having heard the testimony from the two young victims. VTP at 154, 156. The court ordered this condition in

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. K.H.-H.*, No. 91934-8

an effort to address this type of behavior and help K.H.-H. understand that his actions were harmful to young women.

A letter of apology demonstrates a recognition and acceptance of responsibility for harmful actions. Such a condition is reasonably necessary for K.H.-H. to recognize what he did was wrong and to acknowledge his behavior.

Additionally, an apology letter recognizes the victim's interest in receiving an apology from the perpetrator. An apology allows the victim to hear an acceptance of responsibility from the very person who inflicted the harm. This is particularly important where both the victim and perpetrator are juveniles, and demonstrates to both the significance of giving and receiving an apology for wrongful acts. This further advances the rehabilitative goals of the statute.

The outward manifestation of accepting and apologizing for the consequences of one's actions is a rehabilitative step that attempts to improve K.H.-H.'s character and outlook. Such a condition is reasonably related to the purpose of K.H.-H.'s rehabilitation and the crime here.

One must face the consequences of a conviction, which often include the loss or lessening of constitutional rights. There is a whole range of constitutional rights that can be affected by a conviction, not the least of which is a loss of liberty. There may be a limitation on the degree to which First Amendment rights

14

*State v. K.H.-H.*, No. 91934-8

may be restricted for those convicted of crimes, but an apology letter condition does not approach that limit. We affirm.

WE CONCUR:

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. K.H.-H.*, No. 91934-8
(Gordon McCloud, J., dissenting)

No. 91934-8

GORDON McCLOUD, J. (dissenting)—I agree with the majority that the First Amendment ordinarily bars the government from compelling us to speak in favor of a viewpoint that is against our beliefs. Majority at 4; U.S. CONST. amend. I. I also agree with the majority that forcing someone to utter a confession and apology that he or she does not, in his or her heart, believe, constitutes compelled speech and thus would ordinarily violate this First Amendment protection. Majority at 4-5. Finally, I agree with the majority that a criminal defendant can be deprived of this fundamental right in certain circumstances. *Id.* at 5.

My agreement with the majority, however, ends there. The majority holds that the government can compel a juvenile offender to speak against his deeply held personal beliefs whenever the government thinks that it would be reasonable. *See* majority at 6. But controlling Supreme Court precedent developed in the most analogous context—that is, the First Amendment rights of prison inmates against government-compelled speech—holds that the government cannot deprive the

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

convict of that right without an important government interest. *Procunier v. Martinez*, 416 U.S. 396, 413, 94 S. Ct. 1800, 40 L. Ed. 2d 224 (1974), *overruled in part by Thornburgh v. Abbott*, 490 U.S. 401, 413-14, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989) (overruling *Martinez* as to incoming mail into a prison because it implicates prison safety concerns, but not as to the prisoner's own outgoing correspondence, where no such safety concerns exist). Here, that prerequisite is satisfied: rehabilitation of the juvenile is certainly an important government interest. But the First Amendment also requires the government to choose a narrowly tailored means of achieving its permissible interest before compelling a juvenile to endorse a viewpoint. *See id.* at 413; *State v. Bahl*, 164 Wn.2d 739, 757, 193 P.3d 678 (2008). That prerequisite is lacking in this case. Compelling a false apology for a crime the defendant denies committing is far from the least restrictive means of achieving rehabilitation. In fact, it is probably the most ineffective way to achieve that result. I therefore respectfully dissent.

## PROCEDURAL BACKGROUND

Following a bench trial, the juvenile court adjudicated K.H.-H., then a 17-year-old male, guilty of fourth degree assault with sexual motivation against a female classmate. Clerk's Papers (CP) at 51; Verbatim Tr. of Proceedings (VTP) (Aug. 28, 2013) at 142. Despite this disposition, K.H.-H. maintains his innocence.

2

*State v. K.H.-H.*, No. 91934-8
(Gordon McCloud, J., dissenting)

VTP (Aug. 28, 2013) at 150.

During the disposition hearing, the court ordered as a condition of probation

that K.H.-H. "[s]hall write a letter of apology to victim C.R. that is approved by the

Probation Officer and the State." CP at 52. To obtain the State's approval, the letter

needs to be a "sincere written letter of apology . . . mean[ing] *an admission that he

did what he was accused of what he's doing and sorry* he put her in that position."

VTP (Aug. 28, 2013) at 149 (emphasis added). The court explained its reasoning

for imposing this condition as follows:

> I don't know anything about you, other than what was presented
> in court, and my concern is, I don't want you to get in trouble again,
> and my concern is about what, as I said, what I see as a pattern of, I
> guess, being disrespectful to women. They're[1] both much younger
> than you were, and that's of concern to me. So I want to make sure that
> there's some counseling to at least address that, and to be able to, I think
> that you have a lot of respect for your mother, I don't have any question
> about that, but in terms of peers who are younger than you, they warrant
> respect. So that's going to be my ruling.

*Id.* at 156-57. Defense counsel expressly objected to this condition, arguing that

K.H.-H. maintained a right to control his speech and declare his innocence even after

the court's disposition. *Id.* at 150-51. K.H.-H. contends the forced apology violates

---

[1] The underlying case involved two alleged assaults against two different classmates, C.R. and E.O. The juvenile court acquitted K.H.-H. of the count against E.O. after video footage undermined E.O.'s account of what had transpired. VTP (Aug. 14, 2013) at 143-44.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. K.H.-H.*, No. 91934-8
(Gordon McCloud, J., dissenting)

his freedom of speech under the First Amendment and article I, section 5 of the

Washington constitution.[2]

## ANALYSIS

### A. The State Ordinarily Cannot Compel Speech in Support of a Particular Viewpoint Absent the Strictest of Necessity

The majority correctly observes that this exact question is one of first

impression for this court and the United States Supreme Court. Majority at 3. But

we are not without guidance. Outside the context of probation conditions, compelled

speech is generally unconstitutional. This is because "[i]f there is any fixed star in

our constitutional constellation, it is that no official, high or petty, can prescribe what

shall be orthodox in politics, nationalism, religion, or other matters of opinion or

force citizens to confess by word or act their faith therein." *W. Va. State Bd. of Ed.*

*v. Barnette*, 319 U.S. 624, 642, 63 S. Ct. 1178, 87 L. Ed. 1628 (1943).

This protection against compelled speech applies even when the expression

would seem unobjectionable to most of us. *E.g.*, *id.* at 641-42 (compulsory salute

---

[2] Although forced apologies, especially ones that require an admission of guilt, may implicate a person's right against self-incrimination under the Fifth Amendment to the federal constitution, K.H.-H. did not raise a Fifth Amendment challenge below or in his briefs to this court. *See* Wash. Court of Appeals oral argument, *State v. K.H.-H.*, No. 45461-1-II (Feb. 27, 2015), at 2:37, https://www.courts.wa.gov/content/ OralArgAudio/a02/20150227/454611%20-%20State%20v.%20K.H-H.mp3 ("We didn't actually really raise a Fifth Amendment issue although I do think there are Fifth Amendment questions here.")

4

*State v. K.H.-H.*, No. 91934-8
(Gordon McCloud, J., dissenting)

and pledge to the national flag); *Wooley v. Maynard*, 430 U.S. 705, 97 S. Ct. 1428, 51 L. Ed. 2d 752 (1977) (compulsory display of state motto on vehicle license plate). This is because the very purpose of the First Amendment is to "protect[] the right of individuals to hold a point of view different from the majority and to refuse to foster . . . an idea they find morally objectionable." *Wooley*, 430 U.S. at 715. The State, therefore, must generally present a compelling need before it can force a person to speak.

The Supreme Court has adopted two tests for analyzing the constitutionality of compelled speech. In *Wooley*, the compelled speech at issue was the compulsory display of New Hampshire's state motto, "'Live Free or Die,'" on vehicle license plates. *Id.* at 706-07. The Maynards challenged this motto as repugnant to their moral, religious, and political beliefs as members of the Jehovah's Witnesses faith. *Id.* at 707. In striking down New Hampshire's compulsory display law, the Supreme Court held that such laws must be narrowly tailored to achieve a legitimate and substantial governmental purpose. *Id.* at 716. According to the Supreme Court, "'[t]he breadth of legislative abridgment must be viewed in the light of less drastic means for achieving the same basic purpose.'" *Id.* at 716-17 (quoting *Shelton v. Tucker*, 364 U.S 479, 488, 81 S. Ct. 247, 5 L. Ed. 2d 231 (1960)).

5

*State v. K.H.-H.*, No. 91934-8
(Gordon McCloud, J., dissenting)

The Supreme Court adopted an even more protective First Amendment test in *Barnette* where, as here, the government compelled not just the passive display of speech but the express affirmation of a viewpoint—and did so with juveniles. *Barnette*, 319 U.S. at 633. In *Barnette*, the West Virginia State Board of Education adopted a resolution requiring students to salute the American flag and "'pledge allegiance to the Flag of the United States of America and to the Republic for which it stands; one Nation, indivisible, with liberty and justice for all.'" *Id.* at 628-29. The board made no exceptions, not even for the young Jehovah's Witnesses. *Id.* at 628. The Court struck down the resolution as unconstitutional. It explained that the government cannot command such an involuntary affirmation unless it is narrowly tailored to address a clear and present danger. *Id.* at 633-34.

The majority does not dispute that forced apologies are generally unconstitutional under *Barnette*. It contends that a different, less protective test applies when the compulsion to speak is part of a criminal sentence or juvenile disposition. Majority at 5. I agree, but the test the majority adopts strips away so many protections that it undermines the core holding of *Barnette* and conflicts in principle with decisions on free speech in the prison and probation context from both this court and sister jurisdictions.

6

*State v. K.H.-H.*, No. 91934-8
(Gordon McCloud, J., dissenting)

B. <u>The Supreme Court Has Applied Strict Scrutiny to Content-Based Restrictions on Free Speech Even in the Prison Context</u>

We all agree that convicted and incarcerated persons can be deprived of many rights, including constitutional rights. Majority at 5. Indeed, as the Supreme Court has explained, it is a "familiar proposition that '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Pell v. Procunier*, 417 U.S. 817, 822, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974) (alteration in original) (quoting *Price v. Johnston*, 334 U.S. 266, 285, 68 S. Ct. 1049, 92 L. Ed. 1356 (1948)).

But this does not mean that an inmate loses all of his or her First Amendment rights at the prison door. Instead, the Supreme Court has held that even an imprisoned adult "retains those First Amendment rights that are not inconsistent with his [or her] status as a prisoner or with the legitimate penological objectives of the corrections system." *Id.* Such objectives certainly include deterrence and rehabilitation. *Id.* at 822-23.

The Supreme Court, however, has never held that the goal of rehabilitation, alone, permits the judge or jailor to compel inmate or probationer speech with a specified content. Indeed in *Pell*, the Court was careful to distinguish content-neutral prison regulations that limit the avenues of communication available to

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

inmates from prison regulations that limit the content of the prisoner's own speech. *Id.* at 824. According to the Court, as long as the "restriction operates in a neutral fashion, without regard to the content of the expression, it falls within the 'appropriate rules and regulations' to which 'prisoners necessarily are subject.'" *Id.* at 828 (quoting *Cruz v. Beto*, 405 U.S. 319, 321, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972)). In contrast, prison restrictions that limit the content of an inmate's own communications "must further an important or substantial governmental interest unrelated to the suppression of expression" and "the limitation on First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Martinez*, 416 U.S. at 413. "Thus a [content-based] restriction on inmate correspondence that furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad." *Id.* at 413-14.[3]

Compelling speech that voices a specific viewpoint is obviously a content-based restriction. *Riley v. Nat'l Fed'n of Blind of N.C.*, 487 U.S. 781, 795, 108 S. Ct. 2667, 101 L. Ed. 2d 669 (1988). This is because "[m]andating speech that a speaker would not otherwise make necessarily alters the content of the speech." *Id.*

---

[3] Later Supreme Court decisions certainly overruled the application of this rule to many prison situations. But they preserve its application to the single, limited situation at issue here, the convicted offender's own speech: "*Martinez* [is] limited to regulations concerning outgoing [prisoner] correspondence." *Thornburgh*, 490 U.S. at 413.

8

*State v. K.H.-H.*, No. 91934-8
(Gordon McCloud, J., dissenting)

Thus, it follows that *Martinez*—not *Pell*—should apply in the context of a prison regulation compelling speech with a specified viewpoint, and would require that such regulation be narrowly tailored to meet an important or substantial governmental interest. It also logically follows that we cannot choose a test that is less protective of the First Amendment where, as here, the offender who is compelled to confess and apologize is not an imprisoned adult but a released juvenile offender.

C. This Court Has Applied a Similar Important Interest, Narrow-Tailoring Test to Content-Based Probation Conditions

Perhaps for that reason, this court has applied a similar test to probation conditions. As we explained in *Bahl*, "A [community custody] condition that constitutes a '[l]imitation[] upon fundamental rights' is 'permissible, provided [it is] imposed sensitively.'" 164 Wn.2d at 757 (most alterations in original) (quoting *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993)). This, we explained, means "a convict's First Amendment right '"may be restricted if reasonably necessary to accomplish the essential needs of the state and public order."'" *Id.* (quoting *Riley*, 121 Wn.2d at 37-38 (quoting *Malone v. United States*, 502 F.2d 554, 556 (9th Cir. 1974))). The decision we quoted, *Malone*, said that an even more protective test would likely apply if the First Amendment rights at issue were freedom of speech or religion, as opposed to the freedom of association at issue there. *Malone*, 502 F.2d at 556 ("The courts strive to protect freedom of speech, religion and racial equality,

9

*State v. K.H.-H.*, No. 91934-8
(Gordon McCloud, J., dissenting)

but freedom of association may be restricted if reasonably necessary to accomplish

the essential needs of the state and public order.").[4]  Thus, the majority correctly

cites *Bahl* as requiring that probation conditions limiting free speech "be narrowly

tailored to serve an important government interest and must be reasonably necessary

to achieving that interest."  Majority at 7; *Bahl*, 164 Wn.2d at 757.

In spite of quoting and crediting that *Bahl* test, the majority declines to apply

it.  But it is our most recent case in the most analogous context, and it is neither

incorrect nor harmful; hence, it remains controlling (and persuasive) authority.  *Bahl*

holds that a probation condition like the one in this case violates the First

Amendment unless it *both* serves an "important government interest" *and* is

"narrowly tailored" and "necessary to achieving that interest."  If the majority really

applied that test here, the probation condition could not survive.  According to the

juvenile court, the governmental purpose for ordering K.H.-H. to write a letter of

---

[4] I agree with the majority that any reliance on freedom of association cases in the context of freedom of speech inquiries would be misplaced, *see* majority at 7, 9, because those cases describe a less exacting First Amendment analysis. *See Riley*, 121 Wn.2d at 37-38 (applying freedom of association analysis to restriction against associating with computer hackers and communicating on computer bulletin boards); *Malone*, 502 F.2d at 555 (banning participating with, belonging to, working for, or visiting certain establishments and organizations affiliated with the American Irish Republican movement); *Birzon v. King*, 469 F.2d 1241, 1241 (2d Cir. 1972) (prohibiting any association with persons having a criminal record).  Notably, however, the decisions adopting those less protective tests addressed conditions *restricting* association, not conditions *compelling* association against the defendant's will.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

apology was to address K.H.-H.'s pattern of disrespect toward younger women. VTP (Aug. 28, 2013) at 156-57. But the juvenile court could have addressed this concern without infringing upon K.H.-H.'s First Amendment rights—and could have done so far more effectively. For example, the court could have required K.H.-H. to write an essay on the lifelong effects that rape has on young victims.[5] Instead, the court ordered K.H.-H. to write a letter of apology that includes a confession of wrongdoing. *See* CP at 52; VTP (Aug. 28, 2013) at 149. This is not narrowly tailored or necessary. As the Supreme Court has explained, it is one thing to provide education that tends to inspire a specific belief; it is another to shortcut this effort altogether with the substitution of a compulsory statement. *Barnette*, 319 U.S. at 631.

Not surprisingly, no one—not even the State—argues that the apology requirement imposed by the juvenile court in this case was a narrowly tailored means or "necessary" to achieve the permissible goal of rehabilitation. The majority's decision to affirm shows that it is implicitly rejecting *Bahl*. Majority at 15.

In fact, the majority acknowledges that *Bahl* describes the First Amendment

---

[5] *See In re T.M.*, No. H-11-009, 2012-Ohio-3408, ¶ 3, 2012 WL 3061851 (Ohio Ct. App. 2012) (affirming disposition order requiring the juvenile offender to write a 1,000-word essay on "'why racism is wrong'" against First Amendment challenge). According to the court, an essay requirement does not implicate the First Amendment where the court merely chooses the topic of the essay that the juvenile is required to address. *Id.* ¶ 5.

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

test using very different language than the language the majority ultimately borrows from *Clark* (*see supra* Part D below). Majority at 8. As discussed above, under *Bahl*, probation conditions that infringe on a defendant's First Amendment rights must be "reasonably necessary to accomplish the essential state needs and public order." 164 Wn.2d at 758. The majority dismisses *Bahl*'s express requirement that the condition be "reasonably *necessary*" as requiring no more than a "reasonable relationship" among the imposed condition, the underlying crime, and a sentencing purpose. *See* majority at 13-14. But that is not what *Bahl* says. *Bahl* says the condition must be "necessary." This language cannot be set aside as superficial or cosmetic. It is constitutionally required in this context.

D. The Majority Adopts the Least Protective Test

In the place of the *Bahl* test, the majority adopts the least protective test—a highly deferential, rational-relationship test. Majority at 6, 13, 12 (deferring to the sentencing court's "broad discretion," "broad authority," and "wide latitude"). According to the majority, any compelled speech condition will be upheld against a First Amendment challenge as long as that condition is "related to the crime of which the offender was convicted [or adjudicated guilty]" and furthers some sentencing purpose. Majority at 13.

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. K.H.-H.*, No. 91934-8
(Gordon McCloud, J., dissenting)

The majority relies primarily on the Ninth Circuit's decision in *United States v. Clark*, 918 F.2d 843 (9th Cir. 1990) for this deferential, "related to the underlying crime" test. Majority at 9-10. In *Clark*, the trial court imposed a probation condition requiring two officers convicted of perjury to publish apologies and acknowledge that they had lied and betrayed the trust and confidence of the people. 918 F.2d at 845. The Ninth Circuit affirmed, adopting a very forgiving, rational-relationship test: "The test for validity of probation conditions, even where preferred rights are affected, is 'whether the limitations are primarily designed to affect the rehabilitation of the probationer or insure the protection of the public.'" *Id.* at 848 (quoting *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 265 n.14 (9th Cir. 1975) (en banc)). Probation conditions satisfy the *Clark* test if "'the sentencing judge imposed the conditions for permissible purposes, and . . . the conditions are reasonably related to the purposes.'" *Id.* (quoting *United States v. Terrigno*, 838 F.2d 371, 374 (9th Cir. 1988)). The majority accurately cites the *Clark* test.

But it is not the Supreme Court's test, it is not our court's *Bahl* test, and it cannot be the First Amendment's test. Under the majority's and *Clark*'s test, the Alabama court could have ordered Dr. Martin Luther King, Jr., to write an apology to the state of Alabama rather than his "Letter from Birmingham Jail." The question for our court is not whether we like or hate that consequence as a policy matter. The

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

question for us is only whether it is constitutional. Under the majority's restatement of the *Clark* test, it might be. But under the First Amendment, analogous Supreme Court decisions, and *Bahl*, it is not: before the State can compel a person—even a juvenile offender—to speak and endorse a viewpoint, the State must not only justify the condition with an important governmental need, but must also narrowly tailor that condition so that it compels no more speech than necessary to meet that need. *Martinez*, 416 U.S. at 413; *Bahl*, 164 Wn.2d at 757.

## CONCLUSION

The juvenile court's forced apology condition fails under any First Amendment test other than the majority's highly deferential, rational-relationship test borrowed from language in *Clark*. Under the Supreme Court's test in *Martinez*, the government cannot restrict the content of a prison inmate's speech in this context unless the restriction "further[s] an important or substantial governmental interest" and is narrowly tailored so that it infringes on "no greater [speech] than is necessary or essential to the protection of the particular governmental interest involved." 416 U.S. at 413. The compelled confession and apology in this case fails that narrow-tailoring requirement. Under the test we articulated in *Bahl*, the condition must be "'reasonably necessary to accomplish the essential needs of the state and public order.'" *Bahl*, 164 Wn.2d at 757 (internal quotations marks omitted) (quoting *Riley*,

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. K.H.-H.*, No. 91934-8
(Gordon McCloud, J., dissenting)

121 Wn.2d at 37-38). The compelled confession and apology in this case fails that requirement also. In fact, under controlling Supreme Court precedent, compelled speeches and pledges are probably the worst ways to teach remorse or anything else: "A person gets from a symbol the meaning he puts into it, and what is one man's comfort and inspiration is another's jest and scorn." *Barnette*, 319 U.S. at 632-33. I respectfully dissent.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. K.H.-H*, No. 91934-8
(Gordon McCloud, J., dissenting)

Gordon McCloud, J.

González, J.

Fairhurst, J.