IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35850-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| D.W.C.,† | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — After it adjudicated D.W.C. guilty of one count of first degree

rape of a child, the juvenile court ordered a special sex offender disposition alternative

(SSODA). The community supervision conditions imposed included the possibility that

his probation counselor would direct him to participate in a drug and alcohol evaluation

---

† The case name has been changed to *State v. D.W.C.* in accordance with an amendment to RAP 3.4 and General Order of Division III, *In Re Changes to Case Title* (Wash. Ct. App. Aug. 22, 2018), both effective September 1, 2018.

and any recommended treatment.  D.W.C. contends the court exceeded its authority in

imposing the condition, since neither drugs nor alcohol were a factor in the underlying

offense.  He fails to demonstrate that the condition was not part of a disposition tailored

to meet his needs, however, which is the standard that applies.  We affirm.

FACTS AND PROCEDURAL BACKGROUND

In the spring of 2016, D.W.C., then 12 years old, lived next door to a household in

which a couple lived with two seven-year-old boys: their son, whom we will refer to as

Eric, and his slightly younger cousin, whom we will refer to as Bryce.[1]  D.W.C. and his

younger brother would often play with Eric and Bryce.  In April 2016, after Eric and

Bryce were punished by Eric's parents for some sexualized conduct with D.W.C.'s

younger brother, Bryce told his aunt that D.W.C. had made Eric suck his penis.  When

Eric was asked about this by his father, he told his father that D.W.C. had made both him

and his cousin perform the act.  The father initially confronted D.W.C.'s mother about the

report; he and his wife later reported the events to police.

Shortly thereafter, Eric and Bryce were forensically interviewed.  Each stated

when interviewed that D.W.C. made them suck his penis, but they identified different

---

[1] Both are pseudonyms.

2

locations where it occurred.  Based on those interviews and the boys' statements to

others, the State charged D.W.C. in June 2016 with the first degree child rape of both

boys, and in the alternative, with the lesser included crimes of first degree child

molestation.

After multiple continuances, the charges against D.W.C., then almost 14 years old,

proceeded to a bench trial in October 2017.  At the conclusion of the trial, the court found

D.W.C. guilty of only one count: the first degree rape of Eric.  It dismissed the remaining

charges.  The parties agreed that D.W.C. should be evaluated for a SSODA and the

juvenile court ordered an evaluation to be prepared by Priscilla Hannon.  Ms. Hannon's

evaluation expressed the opinion that D.W.C. was amenable to the treatment that a

SSODA would provide.

At the disposition hearing taking place a couple of months after trial, D.W.C.'s

community custody officer, Jeff Ward, agreed with Ms. Hannon's SSODA

recommendation.  He asked that the court impose a SSODA "with standard conditions,"

which he proceeded to recite; among them was "alcohol and drug evaluation treatment

recommendations."  Report of Proceedings (RP) at 687-88.[2]  He recommended a 15 week

---

[2] All citations are to the report of proceedings volume beginning with proceedings
on October 23, 2017.

3

disposition, that the execution of the disposition be suspended, and that D.W.C. be placed on community supervision for two years.

The State did not agree with the SSODA recommendation because D.W.C. denied that the event ever happened, and the SSODA evaluation did not state that D.W.C. had sexually deviant behaviors. It asked that the court impose jail time through the Juvenile Rehabilitation Administration for the 36 week maximum.

When it was D.W.C.'s lawyer's opportunity to address the court, she asked it to follow the probation department's recommendation of a SSODA with some slight adjustments. After identifying her proposed adjustments, which did not touch on the possibility of alcohol and drug evaluation and treatment, she stated, "All other conditions would be appropriate." RP at 707. When D.W.C. addressed the juvenile court, he too requested the sentencing alternative.

The court ordered a SSODA, observing that unlike the adult sexual offender sentencing alternative, a juvenile SSODA does not require that the juvenile admit the offense. It also observed that individuals can offend sexually "not because they are egregious sex offenders," but for reasons having nothing to do with sex, stating that it had seen "people under the influence, people drug-addicted, people drinking alcohol, people

4

stressed, people having bad family situations, a whole myriad of things. And in the

treatment program all of those things are addressed, any specific triggers are addressed,

and they are addressed very aggressively." RP at 714-15. It imposed all of the

conditions requested by the probation department. D.W.C. appeals.

## ANALYSIS

Although he did not object at sentencing, D.W.C. now challenges the community

supervision condition that he "be evaluated for alcohol or other drug dependency at the

direction of the probation counselor and shall comply with all treatment

recommendations." Clerk's Papers (CP) at 158 (boldface omitted). The condition is one

of a dozen optional conditions preprinted in Spokane County's order on adjudication and

disposition form. D.W.C. argues that there must be a connection between community

supervision conditions and a juvenile's underlying offense, and no alcohol or drug

connection to his offense against Eric is shown.

D.W.C. may raise a challenge to an illegal sentence for the first time on appeal.

*State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008). He fails to demonstrate any

illegality, however.

If a juvenile is found to have committed a sex offense that is not a serious violent

offense, and has no history of a prior sex offense, the court may impose a SSODA under

RCW 13.40.162. RCW 13.40.160(3). In ordering a SSODA, the court shall impose a determinate disposition within the standard range for the offense, with the option of suspending execution of the disposition and placing the juvenile on community supervision for at least two years. *Id.*

"Community supervision" is defined by chapter 13.40 RCW to mean "an individualized program" consisting of "one or more of the following: (a) Community-based sanctions; (b) Community-based rehabilitation; (c) Monitoring and reporting requirements; (d) Posting of a probation bond; [and] (e) Residential treatment." RCW 13.40.020(5)(a)-(e). "Community-based rehabilitation" is broadly defined, and includes "outpatient substance abuse treatment programs." RCW 13.40.020(2). "Monitoring and reporting requirements" is also broadly defined and includes "court-ordered treatment programs during specified hours" and "other conditions or limitations as the court may require which may not include confinement." RCW 13.40.020(20). "Juvenile courts are permitted wide latitude and discretion in imposing conditions in a disposition order." *State v. K.H.-H.*, 185 Wn.2d 745, 755, 374 P.3d 1141 (2016). We review the juvenile court's disposition for an abuse of discretion. *State v. Roberson*, 118 Wn. App. 151, 162, 74 P.3d 1208 (2003).

D.W.C. cites *State v. H.E.J.*, 102 Wn. App. 84, 6 P.3d 835 (2000), which he characterizes as "suggest[ing]" that "there must be a nexus between conditions of community supervision and the underlying offense." Opening Br. of Appellant at 7-8.

6

We disagree. *H.E.J.* does not use the word "nexus," and it states expressly that "[n]o authority was found indicating that [sentence] restrictions must relate to the offender's crime in a juvenile context." *H.E.J.*, 102 Wn. App. at 89. The court instead emphasized that juvenile courts have discretion to tailor dispositions to meet the individual needs of a juvenile and the goals of the juvenile systems. *Id.* at 87.

If D.W.C. contends the condition is illegal because it falls outside the trial court's discretion in tailoring a disposition to his needs, he fails to make that showing. To begin with, he has not designated Ms. Hannon's SSODA evaluation as part of the record. As described by our Supreme Court, a SSODA evaluation, which determines the offender's amenability to treatment, includes, "[a]t a minimum . . . a description of the juvenile's offense history, psychological evaluation, social and educational history, employment situation, his or her version of the facts in the case, and proposed treatment terms." *State v. Sanchez*, 177 Wn.2d 835, 840, 306 P.3d 935 (2013) (citing RCW 13.40.162(2)(a)(i)-(v), (b)(i)-(v)). By failing to include the evaluation in the record on appeal, D.W.C. cannot demonstrate that the challenged condition lacks a basis in the SSODA evaluation.

The trial court observed, based on its own familiarity with sex offender treatment programs, that drug or alcohol use can be a trigger for sex offenses that might be identified by the program. For that additional reason, and particularly because evaluation was required only as directed by his probation counselor, D.W.C. does not demonstrate

that imposing the condition was not within the trial court's "wide latitude and discretion" to set the conditions of his supervision. *K.H.-H.*, 185 Wn.2d at 755.

Because D.W.C. shows no error, we need not reach the State's argument that any error was invited by D.W.C.'s lawyer's endorsement of the probation counselor's sentencing recommendation.

Affirmed.[3]

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____          _____
Korsmo, J.                         Fearing, J.

_____

[3] In his opening brief, D.W.C. asked this court to exercise its discretion not to award attorney fees in the event the State substantially prevailed. As the State points out, following amendment in 2015, only adult offenders can be required to pay appellate costs. LAWS OF 2015, ch. 265, § 22; RCW 10.73.160.

8