**FILED**
**AUGUST 30, 2022**
In the Office of the Clerk of Court
WA State Court of Appeals Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38361-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| C.R.C.M., | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — The juvenile court adjudicated C.R.C.M. guilty of two counts of

incest in the second degree for touching his sister's breasts and vagina when he was

thirteen years old and she twelve years old. On appeal, C.R.C.M. only challenges his

sentence. He contends that the juvenile court lacked authority to impose, as conditions of

supervision, participation, at the direction of his community supervisor, in outpatient

substance abuse treatment programs, sex offender classes, and anger management

classes. Because of the wide discretion afforded juvenile courts in juvenile dispositions,

we disagree and affirm.

## FACTS

C.R.C.M., born October 16, 2003, is now an adult. This court, however, granted

his request to refer to him by his initials. We refer to the victim by her initials, B.J.C.M.

C.R.C.M. and B.J.C.M. share the same mother, making them at least half-siblings.

According to B.J.C.M., when she was twelve years old and C.R.C.M. was thirteen years old, he occasionally touched her breasts and vagina with his hand, under her clothes. C.R.C.M. usually touched his sister while she slept. His touching caused her to awaken and swing or kick, after which C.R.C.M. stopped touching her. B.J.C.M. averred that her brother touched either her breasts or vagina more than twenty times between October 17, 2016 and September 22, 2017.

B.J.C.M. described C.R.C.M.'s touching of her as sexual in nature, because she woke up to him touching his erect penis while simultaneously touching her. B.J.C.M. also noted that her brother breathed heavily and moaned, which noises she had previously heard him making while masturbating in front of the living room computer. Even after being punished by his mother for touching B.J.C.M., C.R.C.M. continued to sexually touch his sister.

On August 21, 2020, Deputy Angel Valverde of the Adams County Sheriff's Office interviewed C.R.C.M. During the interview, C.R.C.M. admitted to touching B.J.C.M.'s breasts and vagina with his hand. C.R.C.M. estimated that he inappropriately touched his sister once per week over the course of one to two years. According to C.R.C.M., he touched B.J.C.M. out of curiosity.

PROCEDURE

The State of Washington charged C.R.C.M. with two counts of incest in the second degree for the touching of B.J.C.M. At the conclusion of a one-day trial, the

2

juvenile court found C.R.C.M. guilty as charged. The court found that he touched

B.J.C.M. with a motivation to satisfy his sexual desires.

During the disposition hearing, the State requested that the court extend its

jurisdiction over C.R.C.M., who soon would turn eighteen years old. With no objection

from C.R.C.M., the court granted the motion. At the hearing, B.J.C.M. stated that her

brother was not remorseful for his behavior and opined that counseling would help him

realize the error of his ways.

During the disposition hearing, the State recommended that C.R.C.M. meet with

an evaluator to determine if a Special Sex Offender Disposition Alternative (SSODA)

sentence was appropriate. C.R.C.M.'s counsel stated that C.R.C.M. did not seek a

SSODA sentence. The juvenile court then asked the State for an alternative disposition

recommendation, highlighting that if C.R.C.M. "doesn't want a SSODA, he's not

amenable to a SSODA." Report of Proceedings (RP) at 118. The State requested the

trial court to impose the following sentence:

> That he serve 30 days at Martin Hall on each Count. And that he be
> on supervision with juvenile probation with the conditions of registration.
> And that he do a [sic] 100 hours of community work service, to be
> supervised a minimum of 10 hours a month.
> And that he have other conditions, such as: not to contact the victim,
> B.[J.]C.M.; not to be in the presence of minors without an approved
> chaperone over 18; not to be allowed internet access unless approved by a
> probation officer; not to possess or view sexually explicit material, call sex
> lines, or engage in sexual behavior without approval of probation officer;
> not to initiate dating or sexual relationships without approval of probation
> officer; and to be subject to the other standard conditions, such as not to be

3

associated with people on supervision.
And subject to any referral groups, such as Boys Counsel where maybe his peers could have some sort of helpful intervention.

RP at 118.

C.R.C.M. objected to the State's recommendation prohibiting dating, sexual contact, and internet access. The court addressed his objection:

I'm going to follow the State's recommendation. With respect to internet access, I think the connection is too thin at this point and besides that, those conditions are impossible to enforce, so I won't order the no internet condition. Everything else the State recommended I will order.

RP at 122.

The juvenile court entered an order on adjudication and disposition on July 12, 2021. The order imposed a sentence of 30 days' confinement on each count, 12 months' community supervision on each count, and 100 hours' community service total. The court imposed the following condition of supervision:

Respondent shall participate in counseling, *outpatient substance abuse treatment programs*, outpatient mental health programs, *sex offender, and/or anger management classes* as directed by the probation officer. Respondent shall cooperate fully.

Clerk's Papers at 93 (emphasis added).

## LAW AND ANALYSIS

C.R.C.M. assigns error to that portion of the community supervision conditions that demand that he participate, as required by his probation officer, in outpatient substance abuse treatment programs, sex offender classes, and anger management

4

classes. The State responds that this court should decline to review C.R.C.M.'s

assignment of error because he invited any error and did not preserve any error. The

State also argues that the juvenile court properly imposed the challenged conditions of

supervision pursuant to its broad discretion. C.R.C.M. agrees that he did not object to

these conditions before the juvenile court, but contends this court may still consider his

challenges.

## Unpreserved for Appeal

RAP 2.5(a) permits this court to "refuse to review any claim of error which was

not raised in the trial court." Nevertheless, illegal sentences may be reviewed for the first

time on appeal. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008). Accordingly,

we review C.R.C.M.'s sentence for illegality.

## Invited Error

The invited error doctrine precludes a criminal defendant from seeking appellate

review of an error she helped create, even when the alleged error involves constitutional

rights. *State v. Mercado*, 181 Wn. App. 624, 629-30, 326 P.3d 154 (2014). To be

invited, the error must be the result of an affirmative, knowing, and voluntary act. *State

v. Mercado*, 181 Wn. App. 624, 630 (2014).

The State correctly observes that C.R.C.M. did not object, before the juvenile

court, to the community supervision conditions he now challenges on appeal. His failure

5

to object, however, did not constitute an affirmative act helping to create any error in his

disposition.  Thus, we consider the legality of C.R.C.M.'s sentence.

Community Supervision Conditions

"The standard range disposition for a juvenile adjudicated of an offense is

determined according to RCW 13.40.0357."  RCW 13.40.160(1).  The standard range for

C.R.C.M., who has an offender score of 0, is "local sanctions," as defined in

RCW 13.40.020.  RCW 13.40.0357.

RCW 13.40.020(19) (codified at the time of C.R.C.M.'s offenses at RCW

13.40.020(18) (2016)) defines "local sanctions" as:

> one or more of the following: (a) 0-30 days of confinement; (b) 0-12
> months of community supervision; (c) 0-150 hours of community
> restitution; or (d) $0-$500 fine.

"Community supervision" is a program individualized for the offender.  RCW

13.40.020(5).  Community supervision can be comprised of one or more of the following:

> (a) Community-based sanctions;
> (b) *Community-based rehabilitation*;
> (c) Monitoring and reporting requirements;
> (d) Posting of a probation bond;
> (e) Residential treatment, where substance abuse, mental health,
> and/or co-occurring disorders have been identified in an assessment by a
> qualified mental health professional, psychologist, psychiatrist, co-
> occurring disorder specialist, or substance use disorder professional and a
> funded bed is available.  If a child agrees to voluntary placement in a state-
> funded long-term evaluation and treatment facility, the case must follow the
> existing placement procedure including consideration of less restrictive
> treatment options and medical necessity.

RCW 13.40.020(5) (emphasis added).

> "Community-based rehabilitation" means one or more of the following: Employment; attendance of information classes; literacy classes; counseling, *outpatient substance abuse treatment programs*, *outpatient mental health programs*, *anger management classes*, education or outpatient treatment programs to prevent animal cruelty, *or other services including*, when appropriate, restorative justice programs; or attendance at school or other educational programs appropriate for the juvenile as determined by the school district. Placement in community-based rehabilitation programs is subject to available funds.

RCW 13.40.020(2) (emphasis added).

In *State v. K.H.-H*, 185 Wn.2d 745, 755, 374 P.3d 1141 (2016), the Washington Supreme Court recognized the broad discretion juvenile courts possess when ordering a disposition in juvenile matters, based on the policy behind the Juvenile Justice Act of 1977 (JJA), chapter 13.40 RCW:

> Juvenile courts are permitted wide latitude and discretion in imposing conditions in a disposition order. This makes sense given that juveniles are, by their very nature, still developing. The JJA recognizes the differences between adults and juveniles and embraces rehabilitation as a primary goal rather than a focus primarily on punishment. Because of this, we hold that a juvenile court can impose and require reasonable conditions that are related to the crime of which the offender was convicted and that further the reformoration and rehabilitation of the juvenile.

This court reviews a juvenile court's disposition for an abuse of discretion. *State v. Roberson*, 118 Wn. App. 151, 162, 74 P.3d 1208 (2003).

7

Sex Offender Classes

C.R.C.M., while citing RCW 13.40.020(2), (5), and (19), argues that sex offender classes are not statutorily authorized conditions of community supervision. C.R.C.M. highlights that the juvenile court declined to have him evaluated for a SSODA sentence. He asserts that nothing in the record supports that sex offender classes are appropriate for him, considering that no professional evaluated him. The State responds that sex offender treatment is an appropriate condition of C.R.C.M.'s supervision because the treatment relates directly to his crime of second degree incest.

C.R.C.M. fails to recognize the wide latitude granted juvenile courts in ordering a disposition. He cites to no authority requiring that all community supervision conditions be statutorily authorized. RCW 13.40.020(2)'s list of "community-based rehabilitation" examples is nonexhaustive since the statute provides that rehabilitation may include "other services."

The juvenile court, in *State v. K.H.-H.*, 185 Wn.2d 745, 754 (2016), ordered, as part of K.H.-H's disposition, that he write a letter of apology to the victim. On appeal, the juvenile contended that the apology letter condition infringed on his First Amendment to the United States Constitution rights. Our high court held the condition appropriate, reasoning that the "apology letter condition primarily aims to rehabilitate the juvenile offender but also acknowledges the victim's interest in receiving the apology." *State v.*

*K.H.-H.*, 185 Wn.2d at 754. The statutory list of conditions of supervision does not mention apology letters.

This court, in *State v. H.E.J.*, 102 Wn. App. 84, 9 P.3d 835 (2000) addressed a similar argument to C.R.C.M.'s. The State charged H.E.J. with indecent exposure after exposing his erect penis to his teacher and counselor. The trial court ordered that H.E.J. participate in a sexual deviancy evaluation. This court held that, despite indecent exposure not being a sex offense, the juvenile court properly "concluded a sexual deviancy evaluation was appropriate," based on the court's conclusion that H.E.J's exposing his penis was a "'sexual event.'" *State v. H.E.J.*, 102 Wn. App. at 88.

Consistent with *K.H.-H.* and *H.E.J.*, a juvenile court is not limited to imposing rehabilitation options expressly authorized by statute and may impose whatever reasonable conditions will promote rehabilitation. The condition imposing sex offender classes is related to the crimes C.R.C.M. committed, which were sexual in nature. The condition seeks to rehabilitate C.R.C.M.

C.R.C.M. did not seek a SSODA sentence. Nevertheless, he cites no law limiting the condition of sex offender classes to only a SSODA sentence, as opposed to a local sanctions disposition. C.R.C.M. provides no support for his proposition that a professional must have evaluated him before a sex offender treatment condition could be imposed.

9

Substance Abuse Treatment Programs and Anger Management Classes

C.R.C.M. argues that the record does not indicate the need for the remaining two community supervision conditions he challenges: participation in outpatient substance abuse treatment programs and anger management classes at the direction of his probation officer. The State concedes that the record does not demonstrate that C.R.C.M. suffers from substance abuse or anger issues. It argues, however, that imposing these conditions was within the juvenile court's discretion. We agree with the State.

Individuals may commit sex offenses for reasons divorced from sex. The offenses can result from drug use, drinking alcohol, stress, or family difficulties, among other factors. We observe that C.R.C.M. must undergo drug abuse treatment and anger management classes only at the direction of his supervisor. Outpatient substance abuse treatment or anger management classes may prove relevant to C.R.C.M.'s rehabilitation, if deemed necessary for that end by his probation officer. C.R.C.M. does not challenge the discretion granted to his probation officer.

C.R.C.M. emphasizes that the State did not recommend sex offender classes, outpatient substance abuse treatment, or anger management classes at the disposition hearing. He highlights that the juvenile court remarked, during its oral ruling, that it would follow the State's recommendation aside from prohibiting internet access. C.R.C.M. maintains that, because the court did not exercise its discretion at the disposition hearing to impose these conditions, we must reverse the conditions.

10

C.R.C.M.'s argument fails. A written order controls over any apparent inconsistency with the court's earlier oral ruling. *Pham v. Corbett*, 187 Wn. App. 816, 830-31, 351 P.3d 214 (2015). C.R.C.M. cites to no authority requiring that the juvenile court enumerate, during the disposition hearing, each community supervision condition it intends to impose.

## CONCLUSION

We affirm the conditions of C.R.C.M.'s community supervision.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Staab, J.